1

2

3

4

5

6                   UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9  ELMOR JACOB DE LEON,            ) 1:10-cv—02251-SKO-HC
                                   )
10              Petitioner,        ) ORDER DISMISSING THE PETITION
                                   ) WITHOUT LEAVE TO AMEND FOR
11                                 ) PETITIONER'S FAILURE TO ALLEGE A
       v.                          ) CLAIM ENTITLING PETITIONER TO
12                                 ) RELIEF IN A PROCEEDING PURSUANT
   JAMES HARTLEY, Warden,          ) TO 28 U.S.C. § 2254 (Doc. 1)
13                                 )
                Respondent.        ) ORDER DECLINING TO ISSUE A
14                                 ) CERTIFICATE OF APPEALABILITY AND
   _____) DIRECTING THE CLERK TO CLOSE THE
15                                   CASE

16

17       Petitioner is a state prisoner proceeding pro se and in

18  forma pauperis with a petition for writ of habeas corpus pursuant

19  to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1),

20  Petitioner has consented to the jurisdiction of the United States

21  Magistrate Judge to conduct all further proceedings in the case,

22  including the entry of final judgment, by manifesting consent in

23  a signed writing filed by Petitioner on January 31, 2011 (doc.

24  10).  Pending before the Court is Petitioner's petition, which

25  was filed in this Court on November 16, 2010.

26       I.   Screening the Petition

27       Rule 4 of the Rules Governing § 2254 Cases in the United

28  States District Courts (Habeas Rules) requires the Court to make

                                    1

a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n. 7 (1977)). Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

II. Background

Petitioner alleges he was an inmate of the Avenal State Prison serving a sentence of fifteen (15) years to life pursuant to a sentence imposed on August 16, 1991, by the Los Angeles Superior Court upon Petitioner's conviction of second degree

2

murder, attempted murder, and assault with a firearm in violation of Cal. Pen. Code §§ 187, 664, and 245.  (Pet. 1-2.)  Petitioner challenges a decision of California's Board of Parole Hearings (BPH) made after a hearing held on August 27, 2009, denying Petitioner's application for parole because he was found unsuitable.  (Pet. 5, 21.)

Petitioner raises the following claims in the petition: 1) the decision violated Petitioner's right to due process of law because it was not supported by some evidence (pet. 5, 7, 23); 2) the BPH's denial of parole violated Petitioner's right to the equal protection of the laws (pet. 5, 7, 28); 3) Petitioner was subjected to an ex post facto law because the board denied parole for three years "Under The New Marcy's Law, Proposition 9" (pet. 5, 21), which the Court understands to be a reference to California's Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," a provision that on November 4, 2008, effected an amendment of Cal. Pen. Code § 3041.5(b)(3) that resulted in a lengthening of the period between parole suitability hearings (pet. 5, 7-9, 27, 29, 33, 36-37); 4) Petitioner's rights under the First Amendment were violated (pet. 9, 29); and 5) the board violated state regulatory and statutory law and failed to base its decision on codified suitability criteria (pet. 27, 30, 32).  Petitioner contends that the decision reflected impermissible reliance on immutable factors such as the commitment offense, lacked the support of any evidence, and was made without the consideration and weighing of all favorable evidence.  (Pet. 7, 19-22, 28, 31.)  Petitioner argues that the evidence of Petitioner's parole suitability that

3

was before the board merited a grant of parole.  (Pet. 33-36.)

On December 20, 2010, the Court issued an order to Petitioner to show cause why the petition should not be dismissed for failure to exhaust state court remedies.  (Doc. 7.) Petitioner responded on December 20, 2010, by providing a copy of his petition for writ of habeas corpus filed in the California Supreme Court in case no. S181886, which demonstrated that the claims raised in the petition before the Court were raised before the California Supreme Court.  (Doc. 8, 12-42.)

Petitioner submitted the transcript of the proceedings held before the BPH on August 27, 2009.  (Pet., doc. 1-1, 55-100; doc. 1-2, 1-46.)  The transcript reflects that Petitioner received documents before the hearing (doc. 1-1, 61-64); attended the hearing (pet., doc. 1-1, 55, 58); addressed the board concerning numerous factors of parole suitability (doc. 1-1, 64-100; doc. 1-2, 1-24); made a personal statement to the board in favor of parole (doc. 1-2, 28-30); and was represented by counsel, who advocated and made a closing statement on Petitioner's behalf (doc. 1-1, 55, 58, 62-64; doc. 1-2, 10-11, 25-28).

Petitioner was present when the board stated its reasons for the finding of unsuitability for parole and the denial of parole for three years, which was based on the conclusion that there was an unreasonable risk of danger to others if Petitioner were released.  The board noted Petitioner's commitment offense and his later conviction of possession of a nail while in custody, Petitioner's history of alcoholism, Petitioner's lack of insight into his offense, and what was considered to be untruthfulness in Petitioner's explanations of his criminal conduct.  (Pet., doc.

1   1-2, 31-45.)

2       III.   <u>Failure to State a Cognizable Due Process Claim</u>

3       The petition was filed after April 24, 1996, the effective

4   date of the Antiterrorism and Effective Death Penalty Act of 1996

5   (AEDPA).  Accordingly, the AEDPA applies in this proceeding.

6   <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997), <u>cert.</u> <u>denied</u>, 522 U.S.

7   1008 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

8       A district court may entertain a petition for a writ of

9   habeas corpus by a person in custody pursuant to the judgment of

10  a state court only on the ground that the custody is in violation

11  of the Constitution, laws, or treaties of the United States. 28

12  U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

13  375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13,

14  16 (2010) (per curiam).

15      The Supreme Court has characterized as reasonable the

16  decision of the Court of Appeals for the Ninth Circuit that

17  California law creates a liberty interest in parole protected by

18  the Fourteenth Amendment Due Process Clause, which in turn

19  requires fair procedures with respect to the liberty interest.

20  <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

21      However, the procedures required for a parole determination

22  are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>

23  <u>of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1]

24  _____

25      [1] In <u>Greenholtz</u>, the Court held that a formal hearing is not required
    with respect to a decision concerning granting or denying discretionary
    parole; it is sufficient to permit the inmate to have an opportunity to be
26  heard and to be given a statement of reasons for the decision made. <u>Id.</u> at
    16.  The decision maker is not required to state the evidence relied upon in
27  coming to the decision. <u>Id.</u> at 15-16.  The Court reasoned that because there
    is no constitutional or inherent right of a convicted person to be released
28  conditionally before expiration of a valid sentence, the liberty interest in
    discretionary parole is only conditional and thus differs from the liberty

<u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court

rejected inmates' claims that they were denied a liberty interest

because there was an absence of "some evidence" to support the

decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In <u>Greenholtz</u>, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

<u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

<u>Swarthout</u>, 131 S.Ct. at 862.  The Court in <u>Swarthout</u> expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the Federal Due

---

interest of a parolee.  <u>Id.</u> at 9.  Further, the discretionary decision to
release one on parole does not involve restrospective factual determinations,
as in disciplinary proceedings in prison; instead, it is generally more
discretionary and predictive, and thus procedures designed to elicit specific
facts are unnecessary.  <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due
process was satisfied where the inmate received a statement of reasons for the
decision and had an effective opportunity to insure that the records being
considered were his records, and to present any special considerations
demonstrating why he was an appropriate candidate for parole.  <u>Id.</u> at 15.

1  Process Clause.  Id. at 862-63.

2      Here, Petitioner asks this Court to engage in the very type

3  of analysis foreclosed by Swarthout.  Petitioner does not state

4  facts that point to a real possibility of constitutional error or

5  that otherwise would entitle Petitioner to habeas relief because

6  California's "some evidence" requirement is not a substantive

7  federal requirement.  Review of the record for "some evidence" to

8  support the denial of parole is not within the scope of this

9  Court's habeas review under 28 U.S.C. § 2254.

10     A petition for habeas corpus should not be dismissed without

11 leave to amend unless it appears that no tenable claim for relief

12 can be pleaded were such leave granted.  Jarvis v. Nelson, 440

13 F.2d 13, 14 (9th Cir. 1971).  The allegations in the petition and

14 the related documentation demonstrate that Petitioner attended

15 the parole suitability hearing, made statements to the BPH, and

16 received a statement of reasons for the decision of the BPH.

17 Because it appears from the face of the petition and the attached

18 exhibits that Petitioner received all process that was due,

19 Petitioner cannot state a tenable due process claim.

20     Accordingly, insofar as Petitioner claims a due process

21 violation because of the application of the "some evidence" rule,

22 the petition will be dismissed without leave to amend.

23     IV.  Alleged Denial of Equal Protection

24     Petitioner alleges generally that the board's decision

25 violated his right to equal protection of the laws.  (Pet. 5, 7.)

26 However, Petitioner does not allege any facts that would support

27 such a generalized claim.  After citing In re Rosenkrantz, 29

28 Cal.4th 616 (2002) and In re Lawrence, 150 Cal. App.4th 1511

1  (2008), Petitioner argues in pertinent part:

2       De Leon request (sic) to this court the same
3       <u>Equal Protection and Due Process rights</u> Because
        De Leon's crime is far away to compare with those
        cases Mr. <u>Rosenkrantz</u>, And Mrs. <u>Lawrence</u>.  Mr.
4       Rosenkrantz and Mrs. Lawrence are free persons now)....

5  (Pet. 28:21-24.)

6       Prisoners are protected under the Equal Protection Clause of

7  the Fourteenth Amendment from invidious discrimination based on

8  race, religion, or membership in a protected class subject to

9  restrictions and limitations necessitated by legitimate

10 penological interests.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556

11 (1974); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545-46 (1979).  The Equal

12 Protection Clause essentially directs that all persons similarly

13 situated should be treated alike.  <u>City of Cleburne, Texas v.</u>

14 <u>Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  Violations of

15 equal protection are shown when a respondent intentionally

16 discriminated against a petitioner based on membership in a

17 protected class, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686

18 (9th Cir. 2001), or when a respondent intentionally treated a

19 member of an identifiable class differently from other similarly

20 situated individuals without a rational basis, or a rational

21 relationship to a legitimate state purpose, for the difference in

22 treatment, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564

23 (2000).

24      Here, Petitioner has neither alleged nor shown that

25 membership in a protected class was the basis of any alleged

26 discrimination.  The Court does not find any factual basis for an

27 inference of an intent to discriminate based on an impermissible

28 characteristic.

8

1      Further, Petitioner has not shown that he was treated

2   differently from similarly situated individuals.  In In re

3   Rosenkratz, the petitioner committed second degree murder after

4   he had been assaulted by his victim, who interrupted a homosexual

5   liaison and reported it to the petitioner's father, whose angry

6   confrontation with the petitioner resulted in dramatic, familial

7   discord and the petitioner's departure from his home.  In re

8   Rosenkratz, 29 Cal.4th at 627-29.  The petitioner had no criminal

9   or disciplinary history and no involvement with drugs or alcohol.

10  Id.

11     The other case cited by Petitioner, In re Lawrence, 150 Cal.

12  App.4th 1511 (2007), was superseded by the opinion of the

13  California Supreme Court upon its grant of review.  In re

14  Lawrence, 44 Cal.4th 1181 (2008).  The petitioner in Lawrence was

15  convicted of first degree murder for killing her lover's wife

16  after her lover had informed the petitioner that he had changed

17  his mind and had decided not to leave his wife after all; the

18  petitioner had an exemplary record of rehabilitation, accepted

19  responsibility for her crime, had no criminal history or

20  disciplinary problems in prison, had insight into her motivation

21  for the crime, and was the subject of five psychologists'

22  opinions that she was no longer a danger to public safety.  In re

23  Lawrence, 44 Cal.4th 1181, 1192-95.

24     The facts relevant to the parole suitability of the

25  petitioners involved in the two cited cases are sufficiently

26  different from those present in this case that the Court

27  concludes that Petitioner has not shown that he was similarly

28  situated with the petitioners in those cases.  The Court notes

9

that "the Fourteenth Amendment guarantees equal laws, not equal results."  <u>Personnel Adm'r of Massachusetts v. Feeney</u>, 442 U.S. 256, 273 (1979).

Petitioner also argues that application of the standards of California's Determinate Sentencing Law (DSL) to Petitioner, who asserts that he is an "ISL" (Indeterminate Sentencing Law) life prisoner, is a violation of equal protection.  (Pet. 21.)  The DSL was enacted in 1976.  1976 Cal. Stat., ch. 113, § 1. Petitioner alleges that he was convicted in 1990 and sentenced in 1991.  (Pet. 2.)  Thus, Petitioner has not shown he was entitled to have his parole suitability considered under the ISL.

The Court concludes that the facts alleged by Petitioner in his claim pursuant to the Equal Protection Clause fail to entitle Petitioner to habeas corpus relief.

Petitioner has provided the Court with the record of the proceedings before the BPH.  The facts pertinent to Petitioner's parole suitability are already fully set forth in the record.  It is not logically possible for Petitioner to demonstrate that he was similarly situated with the petitioners in the cited cases. The Court therefore concludes that Petitioner cannot state a tenable equal protection claim.

Therefore, insofar as Petitioner seeks relief for a violation of the Fourteenth Amendment's Equal Protection Clause, the petition will be dismissed without leave to amend.

V.  <u>Alleged Ex Post Facto Violation</u>

Petitioner argues that he was subjected to an ex post facto law by the denial of parole for three years pursuant to the board's application of California's Proposition 9, the "Victims'

1  Bill of Rights Act of 2008: Marsy's Law," which amended Cal. Pen.

2  Code § 3041.5(b)(3) in 2008 after Petitioner had committed his

3  offense.

4      Before Proposition 9 was enacted, Cal. Pen. Code

5  § 3041.5(b)(2) provided that parole suitability hearings would

6  generally occur every year, but could occur every two years in

7  cases in which the board found that it was not reasonable to

8  expect parole would be granted in a year and stated the bases for

9  the finding, or every five years if the prisoner had been

10 convicted of murder and the board found that it was not

11 reasonable to expect parole to be granted during the following

12 years and stated the bases for the finding in writing.  Cal. Pen.

13 Code § 3041.5(b)(2) (2008); Gilman v. Schwarzenegger, - F.3d -,

14 No. 10-15471, 2011 WL 198435, at *2 (9th Cir. Jan. 24, 2011).

15 Proposition 9 amended Cal. Pen. Code § 3041.5(b)(3) to provide

16 that future parole suitability hearings should be scheduled in

17 fifteen years, ten years, or intervals of three, five, or seven

18 years unless the board finds by clear and convincing evidence

19 that statutory criteria relevant to release and the safety of the

20 victim and public do not require the greater period of continued

21 imprisonment.  Cal. Pen. Code § 3041.5(b)(3) (2010); Gilman v.

22 Schwarzenegger, 2011 WL 198435 at *2.

23     In addition, Proposition 9 amended the law concerning parole

24 deferral periods by authorizing the Board to advance a hearing

25 date in its discretion either sua sponte or at the request of the

26 Petitioner.  Cal. Pen. Code § 3041.5(b), (d); Gilman v.

27 Schwarzenegger, 2011 WL 198435, at *6.

28     The Constitution provides, "No State shall... pass any... ex

1  post facto Law." U.S. Const. art I, § 10.  The Ex Post Facto

2  Clause prohibits any law which: 1) makes an act done before the

3  passing of the law, which was innocent when done, criminal; 2)

4  aggravates a crime and makes it greater than it was when it was

5  committed; 3) changes the punishment and inflicts a greater

6  punishment for the crime than when it was committed; or 4) alters

7  the legal rules of evidence and requires less or different

8  testimony to convict the defendant than was required at the time

9  the crime was committed. <u>Carmell v. Texas</u>, 529 U.S. 513, 522

10  (2000).

11     Application of a state regulation retroactively to a

12  defendant violates the Ex Post Facto Clause if the new

13  regulations create a "sufficient risk" of increasing the

14  punishment for the defendant's crimes. <u>Himes v. Thompson</u>, 336

15  F.3d 848, 854 (9th Cir. 2003) (citing <u>Cal. Department of</u>

16  <u>Corrections v. Morales</u>, 514 U.S. 499, 509 (1995)).  When the rule

17  or statute does not by its own terms show a significant risk, the

18  prisoner must demonstrate, by evidence drawn from the rule's

19  practical implementation by the agency charged with exercising

20  discretion, that its retroactive application will result in a

21  longer period of incarceration than under the earlier rule.

22  <u>Garner v. Jones</u>, 529 U.S. 244, 250, 255 (2000).

23     Previous amendments to Cal. Pen. Code § 3041.5 which

24  initiated longer periods of time between parole suitability

25  hearings have been upheld against challenges that they violated

26  the Ex Post Facto Clause.  <u>See</u>, <u>e.g.</u>, <u>California Department of</u>

27  <u>Corrections v. Morales</u>, 514 U.S. 499, 509 (1995) (where the great

28  majority of prisoners were found unsuitable, a 1982 increase of

the maximum period for deferring hearings to five years for offenders who had committed multiple homicides only altered the method of setting a parole release date and did not result in a sufficient risk of increasing the punishment or measure of punishment for the crime in the absence of modification of punishment or of the standards for determining either the initial date for parole eligibility or an inmate's suitability for parole); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (finding no ex post facto violation in applying amended Cal. Pen. Code § 3041.5(b)(2)(A), permitting delay of suitability hearings for several years, to prisoners who were sentenced to a life term before California's Determinate Sentencing Law was implemented in 1977 and who otherwise would have been entitled to periodic review of suitability).

Similarly, a state law permitting the extension of intervals between parole consideration hearings for all prisoners serving life sentences from three to eight years does not violate the Ex Post Facto Clause where expedited parole review was available upon a change of circumstances or receipt of new information warranting an earlier review, and where there was no showing of increased punishment. Garner v. Jones, 529 U.S. 244, 249 (2000). Under such circumstances, there was no significant risk of extending a prisoner's incarceration. Id.

The Court in Garner recognized that state parole authorities retain broad discretion concerning release and must have flexibility in formulating parole procedures and addressing problems associated with confinement and release. Garner v. Jones, 529 U.S. 244, 252-53. Inherent in the discretionary

13

nature of a grant of parole is the need to permit changes in the manner in which the discretion is "informed and then exercised." Garner v. Jones, 529 U.S. at 253.   Further, the timing of the hearings in Garner depended in part on the parole authority's determination of the likelihood of a future grant of parole; thus, the result was that parole resources were put to better use, which in turn increased the likelihood of release.   Id. at 254.   In Garner, the matter was remanded for further proceedings to determine the risk of increased punishment.

In Gilman v. Schwarzenegger, - F.3d -, No. 10-15471, 2011 WL 198435, at *2 (9th Cir. Jan. 24, 2011), the Ninth Circuit reversed a grant of injunctive relief to plaintiffs in a class action seeking to prevent the BPH from enforcing retroactively Proposition 9's amendments that defer parole consideration.   The court concluded that the plaintiffs were not likely to succeed on their claim on the merits.   Id. at *1, *3-*8.   In Gilman, there was no evidence concerning whether or not more frequent parole hearings would result in more frequent grants of parole, as distinct from denials.   Id. at *3.   Although the changes wrought by Proposition 9 were noted to be more extensive than those before the Court in Morales and Garner, advanced hearings, which would remove any possibility of harm, were available upon a change in circumstances or new information.   Id. at *6.   In the absence of record facts from which it might be inferred that Proposition 9 created a significant risk of prolonging the plaintiffs' incarceration, the plaintiffs had not established a likelihood of success on the merits on the ex post facto claim. Id. at *8.

1    Here, Petitioner has not alleged facts warranting a

2  different conclusion.  The board concluded that Petitioner posed

3  an unreasonable risk of danger if released, and that denial was

4  for three years, the minimum they could give under Proposition 9;

5  to be suitable for parole, Petitioner would have to develop

6  insight into his offense, which involved a sudden confrontation

7  in which Petitioner chased and shot an unarmed victim who had

8  kicked Petitioner but then had retreated.  Petitioner then

9  resisted the efforts of third parties to disarm Petitioner and to

10  avoid further confrontation.  Petitioner demonstrated limited

11  remorse, and he needed to develop insight into his behavior and

12  to provide valid explanations of his criminal conduct.  (Doc. 1-

13  2, 32-45.)

14    The Court may take judicial notice of court records.  Fed.

15  R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333

16  (9th Cir. 1993); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626,

17  635 n.1 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir. 1981).

18    The Court takes judicial notice of the docket and specified

19  orders in the class action <u>Gilman v. Fisher</u>, 2:05-cv-00830-LKK-

20  GGH, which is pending in this Court, including the order granting

21  motion for class certification filed on March 4, 2009 (Doc. 182,

22  9:7-15), which indicates that the <u>Gilman</u> class is made up of

23  California state prisoners who 1) have been sentenced to a term

24  that includes life, 2) are serving sentences that include the

25  possibility of parole, 3) are eligible for parole, and 4) have

26  been denied parole on one or more occasions.  The docket further

27  reflects that the Ninth Circuit affirmed the order certifying the

28  class.  (Docs. 257, 258.)  The Court also takes judicial notice

15

1  of the order of March 4, 2009, in which the court described the
2  case as including challenges to Proposition 9's amendments to
3  Cal. Pen. Code § 3041.5 based on the Ex Post Facto Clause, and a
4  request for injunctive and declaratory relief against
5  implementation of the changes.  (Doc. 182, 5-6.)

6      The relief sought by Petitioner concerns in part the future
7  scheduling of Petitioner's next suitability hearing and
8  necessarily implies the invalidation of state procedures used to
9  deny parole suitability (pet. 9, 40-41), matters removed from the
10 fact or duration of confinement.  Such types of claims have been
11 held to be cognizable under 42 U.S.C. § 1983 as claims concerning
12 conditions of confinement.  Wilkinson v. Dotson, 544 U.S. 74, 82
13 (2005).  Thus, they may fall outside the core of habeas corpus
14 relief.  See, Preiser v. Rodriquez, 411 U.S. 475, 485-86 (1973);
15 Nelson v. Campbell, 541 U.S. 637, 643 (2004); Muhammad v. Close,
16 540 U.S. 749, 750 (2004).

17     Further, the relief Petitioner requests overlaps with the
18 relief requested in the Gilman class action.  A plaintiff who is
19 a member of a class action for equitable relief from prison
20 conditions may not maintain an individual suit for equitable
21 relief concerning the same subject matter.  Crawford v. Bell, 599
22 F.2d 890, 891-92 (9th Cir. 1979).  It is contrary to the
23 efficient and orderly administration of justice for a court to
24 proceed with an action that would possibly conflict with or
25 interfere with the determination of relief in another pending
26 action, which is proceeding and in which the class has been
27 certified.

28     Here, Petitioner's own allegations reflect that he qualifies

1 as a member of the class in <u>Gilman</u>.  The court in <u>Gilman</u> has

2 jurisdiction over same subject matter and may grant the same

3 relief.  A court has inherent power to control its docket and the

4 disposition of its cases with economy of time and effort for both

5 the court and the parties.  <u>Landis v. North American Co.,</u> 299

6 U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260

7 (9th Cir. 1992).  In the exercise of its inherent discretion,

8 this Court concludes that dismissal of Petitioner's ex post facto

9 claim in this action is appropriate and necessary to avoid

10 interference with the orderly administration of justice.  <u>Cf.</u>,

11 <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>,

12 2011 WL 23064, *2-*5 (E.D.Cal. Jan. 4, 2011).

13     In view of the allegations of the petition and the pendency

14 of the <u>Gilman</u> class action, amendment of the petition with

15 respect to the ex post facto claim would be futile and

16 unproductive.

17     The Court notes that Petitioner also alleges that he

18 suffered an ex post facto violation when DSL standards were

19 applied to him because he was an "ISL Life Prisoner."  (Pet. 21.)

20 However, as previously noted, Petitioner's conviction and

21 sentence occurred after the DSL was enacted.  Thus, Petitioner

22 has not stated facts that would entitle him to relief because he

23 has not alleged facts showing any ex post facto application of

24 DSL standards for parole suitability.  Further, because

25 Petitioner was convicted after the DSL was enacted, Petitioner

26 could not state a tenable ex post facto claim if leave to amend

27 were granted.

28     Accordingly, Petitioner's ex post facto claim will be

17

1  dismissed without leave to amend.

2      VI.   <u>First Amendment Claim</u>

3          Petitioner argues that his rights under the First Amendment
4  were violated.  (Pet. 9, 29.)  However, the petition is devoid of
5  factual allegations concerning this claim; Petitioner only
6  concludes that his rights were violated, and cites <u>Turner v.</u>
7  <u>Hickman</u>, 342 F.Supp.2d 887 (E.D.Cal. 2004).[2]  (Pet. 9, 29.)

8          In <u>Turner v. Hickman</u>, 342 F.Supp.2d 887, a Christian inmate
9  alleged that parole authorities expressly conditioned in part the
10  plaintiff's eligibility for release on parole upon participation
11  in Narcotics Anonymous (NA).  <u>Id.</u> at 890.  This Court concluded
12  that by repeated application of the "coercion" test set forth in
13  <u>Lee v. Weisman</u>, 505 U.S. 577, 587 (1992), the Supreme Court had
14  made the applicable law clear.  <u>Turner</u>, 342 F.Supp.2d at 894.  By
15  expressly telling the plaintiff he needed to participate in NA in
16  order to be eligible for parole, the state had acted coercively
17  to require participation in a program in which the evidence
18  showed that belief in "God" was a fundamental requirement of
19  participation.  <u>Id.</u> at 895-96.  Accordingly, the First Amendment
20  prohibited the requirement.  <u>Id.</u> at 896-99.

21          In <u>Inouye v. Kemna</u>, 504 F.3d 705 (9th Cir. 2007), the court
22  considered whether state parole authorities had qualified
23  immunity in a § 1983 suit by a plaintiff who alleged that as a
24  condition of parole, they required his attendance in drug
25  treatment programs (AA and NA) rooted in a regard for a higher

26

27          [2] Because Petitioner cites to <u>Turner v. Hickman</u>, the Court understands
28  Petitioner's claim to relate to having been coerced to participate in a
    program which required belief in a higher power.

power.   In response to the argument of a defendant supervisory
parole officer that the law was not clearly established at the
time, the court held that the law "was and is very clear,
precluding qualified immunity...."   Inouye, 504 F.3d at 711-12.
The court found that there had been consistent articulation of
the principle that the government may not coerce anyone to
support or participate in religion or its exercise, or punish
anyone for not so participating.   Id. at 713 (citing Everson v.
Board of Education of Ewing Township, 330 U.S. 1 (1947) and Lee
v. Weisman, 505 U.S. 577, 587 (1992)).   The court further noted
that the basic test for Establishment Clause violations remains
that stated in Lemon v. Kurtzman, 403 U.S. 602, 613 (1971),
namely, that the government acts 1) have a secular legislative
purpose, 2) not have a principal or primary effect which either
advances or inhibits religion, and 3) not foster an excessive
government entanglement with religion.   Id. at 713 n.7.   The
court concluded that recommending revocation of parole for a
parolee's failure to attend the programs after an order to
participate was given was unconstitutionally coercive.   Id. at
713-14.   In finding the law clear, the court in Inouye relied not
only on lower court decisions, but also in part on the decisions
of the United States Supreme Court and the absence of any Supreme
Court case upholding government-mandated participation in
religious activity in any context.   Id. at 715.

Here, Petitioner's self-help programming for alcoholism,
which was discussed at the parole hearing, included significant
participation in Catholic services, reading sixteen self-help
books that included substance abuse recovery, and an independent

1  study project in relapse prevention.  (Pet., doc. 1-1, 99-100;

2  doc. 1-2, 1-2.)  His letters of support reflected that Petitioner

3  had written to AA in New York to obtain an AA contact address in

4  the United States and his native country of Guatemala for use

5  upon release.  (Pet., doc. 1-2, 11.)  In his personal statement

6  to the board, Petitioner said that if released he wanted to open

7  an AA group so that he could help himself and others to stay

8  sober.  (Doc. 1-2, 29.)  When explaining the decision to deny

9  parole, a board member stated that a prior parole panel convened

10 in the previous year had asked Petitioner to work on his

11 "substance abuse availability" in Guatemala, and that this had

12 been provided to the present panel on the day of the hearing.

13 (Doc. 1-2, 41.)  Petitioner had not had any alcohol or controlled

14 substance disciplinary violations during his entire period of

15 incarceration, and Petitioner's participation in self-study in

16 relapse prevention was commendable.  (Id. at 42-43.)  It was

17 recommended that Petitioner continue with his self-help.  (Id. at

18 44.)

19      In sum, the record of the proceedings before the board shows

20 that Petitioner was not required to attend AA or any specific

21 programing that involved belief in a higher power.  The record

22 does not contain facts supporting a finding of violation of

23 Petitioner's First Amendment rights at the proceedings of the

24 parole board held on August 27, 2009, that are before the Court[3].

25 As the complete transcript of the proceedings is already before

26 the Court, it is not logically possible that Petitioner could

27

28      [3] Although Petitioner mentions previous parole hearings, it is the hearing held on August 27, 2009, that is
the subject of the present petition.

1  state a tenable claim under the Establishment Clause of the First
2  Amendment.

3      Therefore, Petitioner's claim concerning a First Amendment
4  violation will be dismissed without leave to amend.

5      VII.   <u>Allegations Concerning State Law</u>

6      Petitioner argues that the board's decision violated state
7  regulatory and statutory law, and that the board failed to base
8  its decision on codified suitability criteria.  To the extent
9  that Petitioner's claim or claims rest on state law, they are not
10 cognizable on federal habeas corpus.  Federal habeas relief is
11 not available to retry a state issue that does not rise to the
12 level of a federal constitutional violation.  <u>Wilson v. Corcoran</u>,
13 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502
14 U.S. 62, 67-68 (1991).  Alleged errors in the application of
15 state law are not cognizable in federal habeas corpus.  <u>Souch v.</u>
16 <u>Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

17     Thus, Petitioner's claim or claims concerning the board's
18 alleged violations of state law will be dismissed without leave
19 to amend.

20     VIII.   <u>Certificate of Appealability</u>

21     Unless a circuit justice or judge issues a certificate of
22 appealability, an appeal may not be taken to the Court of Appeals
23 from the final order in a habeas proceeding in which the
24 detention complained of arises out of process issued by a state
25 court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537
26 U.S. 322, 336 (2003).  A certificate of appealability may issue
27 only if the applicant makes a substantial showing of the denial
28 of a constitutional right.  § 2253(c)(2).  Under this standard, a

21

1  petitioner must show that reasonable jurists could debate whether
2  the petition should have been resolved in a different manner or
3  that the issues presented were adequate to deserve encouragement
4  to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336
5  (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A
6  certificate should issue if the Petitioner shows that jurists of
7  reason would find it debatable whether the petition states a
8  valid claim of the denial of a constitutional right and that
9  jurists of reason would find it debatable whether the district
10 court was correct in any procedural ruling.  Slack v. McDaniel,
11 529 U.S. 473, 483-84 (2000).

12      In determining this issue, a court conducts an overview of
13 the claims in the habeas petition, generally assesses their
14 merits, and determines whether the resolution was debatable among
15 jurists of reason or wrong.  Id.  It is necessary for an
16 applicant to show more than an absence of frivolity or the
17 existence of mere good faith; however, it is not necessary for an
18 applicant to show that the appeal will succeed.  Miller-El v.
19 Cockrell, 537 U.S. at 338.

20      A district court must issue or deny a certificate of
21 appealability when it enters a final order adverse to the
22 applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

23      Here, it does not appear that reasonable jurists could
24 debate whether the petition should have been resolved in a
25 different manner.  Petitioner has not made a substantial showing
26 of the denial of a constitutional right.  Accordingly, the Court
27 will decline to issue a certificate of appealability.
28 ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IX.   <u>Disposition</u>

Accordingly, it is ORDERED that:

1)   The petition is DISMISSED without leave to amend because Petitioner has failed to state a claim entitling him to habeas corpus relief in a proceeding pursuant to 28 U.S.C. § 2254; and

2)   The Court DECLINES to issue a certificate of appealability; and

3)   The Clerk is DIRECTED to close the case because this order terminates the action in its entirety.

IT IS SO ORDERED.

Dated:   __May 27, 2011__                        _____/s/ Sheila K. Oberto_____
                                                                 UNITED STATES MAGISTRATE JUDGE